IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PAUL DENNIS KALAMA, | ) | CIVIL NO. 10-00278 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANT JP MORGAN |
| | ) | CHASE BANK, individually and as |
| JP MORGAN CHASE BANK, | ) | Trustee fka THE CHASE |
| individually and as Trustee fka THE | ) | MANHATTAN BANK as Trustee's |
| CHASE MANHATTAN BANK as | ) | MOTION FOR SUMMARY |
| Trustee; CAL-WESTERN | ) | JUDGMENT; AND |
| RECONVEYANCE CORPORATION; | ) | (2) GRANTING IN PART AND |
| and DOES 1-30, | ) | DENYING IN PART CAL- |
| | ) | WESTERN RECONVEYANCE |
| Defendants. | ) | CORPORATION'S MOTION FOR |
| _____ | ) | SUMMARY JUDGMENT |

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT
JP MORGAN CHASE BANK, individually and as Trustee fka THE CHASE
MANHATTAN BANK as Trustee's MOTION FOR SUMMARY
JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART
CAL-WESTERN RECONVEYANCE CORPORATION'S MOTION FOR
SUMMARY JUDGMENT**

## I. <u>INTRODUCTION</u>

On April 5, 2010, Plaintiff Paul Dennis Kalama ("Plaintiff") filed this

action in the First Circuit Court of the State of Hawaii asserting that Defendants JP

Morgan Chase Bank, individually and as Trustee fka The Chase Manhattan Bank

as Trustee ("JPM") and Cal-Western Reconveyance Corporation ("Cal-Western"),

(collectively "Defendants"), misled and/or failed to disclose to Plaintiff material

facts during a mortgage foreclosure auction at which Plaintiff was the successful bidder.  Specifically, Plaintiff believed that the real property he successfully purchased at a foreclosure auction, located at 98-426 Kilinoe Street #307, Aiea, Hawaii 96701 (the "subject property"), was encumbered by one mortgage, when in fact is was encumbered by two mortgages.  The action was subsequently removed to this court.

Currently before the court are JPM's and Cal-Western's Motions for Summary Judgment, in which they argue that Plaintiff's own lack of due diligence prevented him from learning of the additional mortgage and that they had no duty to disclose all encumbrances on the subject property.  Based on the following, the court GRANTS in part and DENIES in part JPM's and Cal-Western's Motions for Summary Judgment.

## II. <u>BACKGROUND</u>

**A.     Factual Background**

Prior to the mortgage foreclosure auction at issue in this case, the subject property was owned by Mark Miho and Lynn Hatakenaka (the "Prior Owners").  Doc. No. 43-4, JPM Ex. 3.  On or about March 21, 1994, the Prior Owners entered into a $188,490 mortgage loan (the "First Mortgage") on the subject property with North American Mortgage Company.  *Id.*  On or about June

25, 2000, the Prior Owners entered into a second mortgage loan (the "Second Mortgage") on the subject property for $35,000 with International Savings and Loan Association, Limited. Doc. No. 43-2, JPM Ex. 1. Both of these mortgages were recorded in the Bureau of Conveyances, *see* Doc. Nos. 43-2, 43-4, JPM Exs. 1, 3, and the Land Court Transfer Certificate of Title for the subject property indicates these encumbrances. Doc. No. 43-3, JPM Ex. 2. The First Mortgage was subsequently assigned to Wells Fargo Bank, N.A., and the Second Mortgage was subsequently assigned to JPM. *See* Doc. Nos. 49-1, 49-2, Cal-Western Request for Judicial Notice ("RJN") Exs. B, C.[1]

After the Prior Owners failed to make payments on the Second Mortgage, JPN caused to be recorded in the Bureau of Conveyances a Notice of Mortgagee's Intention to Foreclose Under Power of Sale on the subject property on September 18, 2006. Doc. No. 43-5, JPM Ex. 4; *see also* Doc. No. 48-6, Lorrie

---

[1] Cal-Western requests the court to take judicial notice of several exhibits, including the Prior Owners' First Mortgage with North American Mortgage Company, the assignments of the First Mortgage to GE Mortgage Services and then to Wells Fargo, the Prior Owners' Second Mortgage with International Savings and Loan, the assignments of the Second Mortgage to Residential Funding Corporation and then to JPM, and pleadings and filings from Wells Fargo's foreclosure action. *See* Doc. No. 49, Cal-Western Request for Judicial Notice. Because they are all of public record, the court takes judicial notice of Cal-Western Exs. A-I. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

Womack Decl. ¶ 2.  The Notice provided that the Mortgagee will hold a sale of the

subject property through public auction, and that the terms of the sale include,

among other things:

> (2) Property is sold strictly 'AS IS' and 'WHERE IS'
> condition; (3) Property is sold without covenant or
> warranty, either express or implied, as to title, possession
> or encumbrances; . . . (6) The availability of title or other
> insurance shall not be a condition of the sale, and the
> Purchaser shall be responsible for obtaining a certificate
> of title and title insurance, if so desired . . . . (10) By
> submitting the Bid, Purchaser acknowledges reading the
> terms and conditions set forth in this notice and agrees to
> be bound thereby and sign a written acceptance of all
> terms herein . . . .

Doc. No. 43-6, JPM Ex. 4 at 2.  JPM subsequently published an advertisement for

the auction in the Honolulu Star-Bulletin on September 15, 22, and 29, 2006 that

reiterated the terms of the sale contained in the Notice.  *See* Doc. No. 48-6,

Womack Decl. Ex. B.

On April 13, 2007, Cal-Western conducted the foreclosure auction on

JPM's behalf.  Doc. No. 43, JPM Concise Statement of Fact ("CSF") ¶ 8;[2] Doc.

No. 46, Cal-Western CSF ¶ 10.[3]  Before the auction, Plaintiff had gone to the

---

[2] Where the parties do not dispute a particular fact, the court cites directly to the CSF in question.

[3] Plaintiff objects to (1) Cal-Western's CSF because it does not comply with Local Rule ("LR") 56.1(d) requiring that a CSF be no longer than five pages; and (2) Cal-Western's exhibits

(continued...)

courthouse to view other foreclosure auctions, and had carried multiple certified checks approximately ten times over the preceding weeks. Doc. No. 43, JPM CSF ¶ 9. Plaintiff had no prior experience in foreclosure sales, and other than doing brief internet research, he had no formal training and never consulted an attorney or real estate agent. *Id.* ¶ 12.

Plaintiff attended the April 13, 2007 auction with no prior knowledge of the subject property, or even knowledge that the subject property would be auctioned that day. *Id.* ¶ 13. Although Plaintiff had a general understanding of the market values of homes in the area and the subject property in particular, *see* Doc. No. 48-2, Rosen Decl. Ex. B at 34, Plaintiff did not see any documents relating to the subject property prior to bidding. Doc. No. 43, JPM CSF ¶¶ 11, 14. Plaintiff had, however, previously reviewed other notices of intent to foreclose and admitted that they all contained similar "as-is" language. *See* Doc. No. 43-5, JPM Ex. 5 at 31-32.

---

[3](...continued)
because Cal-Western failed to highlight and/or emphasize relevant portions as required by LR 51.1(c). The court agrees that Cal-Western has failed to follow Local Rules. A review of Cal-Western's CSF reveals that it does not comply with the page limitation requirements and contains facts that are not "absolutely necessary for the court to determine the limited issues presented in the motion for summary judgment." LR 56.1(c). Cal-Western could have complied with the page limitation requirement had it included only those facts necessary to its Motion, as opposed to taking a kitchen-sink approach of including fifty-nine separate facts for the court to sift through. With that said, however, the court will nonetheless consider Cal-Western's CSF and exhibits.

Plaintiff asserts that during the auction, he heard the auctioneer, Walter Beh, Esq. ("Beh"), state "there was a mortgage on the property and that the bank [in singular] was owed $53,000 or $54,000." Doc. No. 57-1, Pl.'s Decl. ¶ 14 (alterations in original); *see also* Doc. No. 43, JPM CSF ¶ 10. Plaintiff further asserts that he "relied upon the professional competence, knowledge, good faith, and representations of the auctioneer and its agents in reasonably believing that the subject property was being sold free and clear of any senior liens on the subject property, as obviously did seven other competitive bidders at the auction . . . ." Doc. No. 57-1, Pl.'s Decl. ¶ 19. Plaintiff won the auction with a bid of $231,000, *id.* ¶ 16, and gave Beh two certified checks totaling $40,000, with three weeks to pay the balance. *Id.* ¶ 17.

The day after the auction, Cal-Western sent Plaintiff a letter confirming that the subject property was sold to Plaintiff and providing copies of the unrecorded Mortgagee's Affidavit of Sale and a Grant Deed and Tax Conveyance Form for Plaintiff to record to vest title in his name. *See* Doc. No. 48-6, Womack Decl. Ex. C. The Grant Deed specifically states that the subject property is subject to a "Mortgage dated March 21, 1994, flied [sic] as Document No. 2132131, in favor of North American Mortgage Company, a Delaware Corporation, which was assigned to G.E. Capital Mortgage Services, Inc., a New

Jersey Corporation, by instrument flied [sic] as Document No. 2229464." Doc.

No. 48-6, Womack Decl. Ex. D; *see also id.* Womack Decl. Ex. E (Mortgagee's

Affidavit containing same language regarding First Mortgage as in the Grant

Deed).

Plaintiff subsequently spoke with Cal-Western employee Lorrie

Womack regarding how the final payment should be made. Doc. No. 57-1, Pl.'s

Decl.¶ 21. During this conversation, Plaintiff asked Womack if there were any

liens on the subject property and if "the title would be clear," to which Womack

replied that there were no other liens and that the title would be clear.[4] *Id.*

Womack assured Plaintiff that the subject property would be his once he paid the

balance of the purchase price and recorded the deed. *Id.* ¶ 22. Other than speaking

---

[4] Cal-Western argues that Plaintiff's Declaration asserting that Womack assured him there were no liens on the subject property directly contradicts his deposition testimony and should be struck pursuant to the sham affidavit rule. In fact, there is no contradiction of the sort that would invoke the sham affidavit rule. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009) ("[O]ur cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."). During his deposition, Plaintiff stated that he did not "recall exactly" whether he specifically asked Womack if there were any other liens on the subject property. *See* Doc. No. 48-2, Cal-Western Ex. B at 105. Although it appears that Plaintiff has suddenly (and conveniently) regained memory of this converation, "[v]ariations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986); *BNSF Ry. Co. v. San Joaquin Valley R. Co.*, 2009 WL 3872043, at *7 (E.D. Cal. Nov. 17, 2009) ("[I]nnocent lapses of memory, such as a failure to remember one item to a question calling for many items to be recollected, or lack of memory as to precise dates, would be permissible; however, changes from 'yes' to 'no,' or gross departures from original testimony, would not be legitimate.").

with Womack, the only act Plaintiff took after the auction to investigate the subject property was to drive by it. Doc. No. 43, JPM CSF ¶ 19. Plaintiff did not (1) have a title search done, speak to a title or escrow company, or attempt to obtain title insurance, *id.* ¶ 20; (2) review the publicly recorded documents in Land Court, *id.* ¶ 21; or (3) determine if real property taxes or association dues were overdue. *Id.* ¶ 22.

After Plaintiff paid the full amount of his bid, he had his cousin record the Grant Deed in Land Court. *Id.* ¶ 23. After Plaintiff paid the full amount due and recorded the deed, Plaintiff alleges that he spent $20,000 on renovations. *Id.* ¶ 25.

Plaintiff was subsequently served with a notice of foreclosure from the First Mortgage lienholder, Wells Fargo. *Id.* ¶ 26; *see also* Doc. No. 48-2, Rosen Decl. Ex. B at 108 (describing that Plaintiff first became aware of the First Mortgage in May 2007 when a third party knocked on his door and told him of the foreclosure action). On October 2, 2007, Wells Fargo filed a Complaint for Foreclosure on the First Mortgage in the First Circuit Court of the State of Hawaii. *See* Doc. No. 46, Cal-Western CSF ¶ 53. On November 3, 2009, the First Circuit Court entered an order confirming the Commissioner's sale of the subject property to a third party with a winning bid of $247,000. *Id.* ¶ 55. As a result, Plaintiff lost

possession of the subject property.  Doc. No. 43, JPM CSF ¶ 26.

**B.      Procedural Background**

On April 5, 2010, Plaintiff filed this action in the First Circuit Court
of the State of Hawaii, asserting claims titled (1) Breach of Contract (Count I);
(2) Negligent/Reckless Misrepresentation and Nondisclosure (Count II); (3) Fraud
and Deceit (Count III); and (4) Unfair and Deceptive Acts and Practices (Count
IV).  On May 11, 2010, Cal-Western removed the action to this court on the basis
of diversity jurisdiction.

JPM filed its Motion for Summary Judgment on July 11, 2011, and
Cal-Western filed its Motion for Summary Judgment on August 31, 2011.  Plaintiff
filed a Joint Opposition on October 17, 2011, and Defendants filed Replies on
October 24, 2011.  A hearing was held on November 7, 2011.  On November 9,
2011, JPM submitted a letter to the court with supplemental authority.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of
material fact and the moving party is entitled to judgment as a matter of law.  Fed.
R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who
fails to make a showing sufficient to establish the existence of an element essential
to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## IV.  **DISCUSSION**

Defendants argue that summary judgment should be granted on all of

Plaintiff's claims for a variety of reasons.  The court addresses each claim in turn.

## A.  **Breach of Contract (Count I)**

Count I asserts that Defendants "materially breached their contractual

obligations to Kalama in consideration therefore, by failing to disclose the First

Mortgage lien on the subject property with full knowledge of same . . . ."  Doc. No.

1-2, Compl. ¶ 25.  Defendants argue that summary judgment should be granted on

this claim because, among other reasons, JPM did not breach any term of the

agreement between Plaintiff and JPM, and Cal-Western never entered into any

contract with Plaintiff.  The court agrees.

To prevail on a breach of contract claim, a plaintiff must generally

establish that a contract exists, the defendant failed to perform as required under

the contract, and that the defendant's failure to perform caused the plaintiff damages. *See Wyndham Vacation Resorts, Inc. v. Architects Haw. Ltd., Grp. Pac. (Haw.), Inc.*, 703 F. Supp. 2d 1051, 1062 (D. Haw. 2010) (citing *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Haw. 286, 303-04, 141 P.3d 459, 476-77 (2006)). A contract was formed between JPM and Plaintiff to purchase the subject property when Plaintiff was the winning bidder. *See Terr. of Hawaii v. Branco*, 42 Haw. 304, 316 (Haw. Terr. 1958) ("It is elementary in the law of contracts that at an auction an enforceable contract is formed upon the fall of the hammer."); *see also Lee v. HSBC Bank USA*, 121 Haw. 287, 295, 218 P.3d 775, 783 (2009) (acknowledging the principle in *Branco* where an auction is conducted under Hawaii Revised Statutes ("HRS") § 667-5). The terms of this contract -- *i.e.*, the auction terms -- specifically provided that the subject property was being sold in "'AS IS' and 'WHERE IS' condition [and] without covenant or warranty, either express or implied, as to title, possession or encumbrances." Doc. No. 43-5, JPM Ex. 4 at 2.

Given the express terms of the contract in which JPM expressly disclaimed any representations regarding the existence of any encumbrances on the title of the subject property, there is no genuine issue of material fact suggesting that JPM breached any contractual term with Plaintiff by failing to disclose the

12

existence of the First Mortgage.  Further, given that this contract was between JPM and Plaintiff only, there is no genuine issue of material fact suggesting that any contract existed between Plaintiff and Cal-Western.  Defendants therefore carried their burden on summary judgment, and in opposition, Plaintiff neither argues that JPM violated any particular contractual term, nor suggests that any contract existed between Plaintiff and Cal-Western.

The court therefore GRANTS Defendants' Motion for Summary Judgment on Plaintiff's breach of contract claim.

## B.    Negligent/Reckless Misrepresentation and Nondisclosure (Count II)

Count II asserts two different claims -- one for negligent/reckless misrepresentation, and one for negligent/reckless nondisclosure.  *See* Doc. No. 1-2, Compl. ¶ 27 ("Count II of the Complaint asserts that Defendants negligently and/or recklessly failed to disclose the First Mortgage and/or misrepresented facts to Plaintiff, which caused him to bid on the subject property at auction.").  The court addresses these claims in turn.

### 1.    *Negligent/Reckless Misrepresentation*

A negligent misrepresentation requires a plaintiff to establish that "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose

benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." *Assoc. of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc.*, 115 Haw. 232, 263, 167 P.3d 225, 256 (2007); *see also Blair v. Ing*, 95 Haw. 247, 269, 21 P.3d 452, 474 (2001) (citing *Kohala Agric. v. Deloitte & Touche*, 86 Haw. 301, 323, 949 P.2d 141, 163 (1997)) (emphasis deleted).

As explained in *Blair*, 95 Haw. at 269, 21 P.3d at 474, the material elements for this claim are taken from the Restatement (Second) of Torts § 552, which describes this tort as follows:

> § 552. Information Negligently Supplied for the Guidance of Others
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Thus, implicit in these elements is that the defendant have some duty to supply the information, and that the plaintiff be justified in relying on the information. *See also Lindsey v. CUNA Mut. Ins. Soc.*, 2010 WL 4397036, at *3 (D. Haw. Oct. 29, 2010) (describing elements of negligent misrepresentation claim and the Restatement (Second) of Torts to imply a duty element).

14

Defendants argue that summary judgment must be granted on this claim because they had no duty to disclose the First Mortgage to Plaintiff, they made no misrepresentations, and any reliance by Plaintiff was unreasonable. The court disagrees.

In general, the doctrine of caveat emptor provides that the seller in a foreclosure auction makes "no warranty of title and is generally subject to no duty to investigate or describe outstanding liens or encumbrances.'" *Cadet v. Draper & Goldberg, PLLC*, 2007 WL 2893418, at *6 (D. D.C. Sept. 28, 2007) (citations omitted); *see, e.g.*, *In re Vota*, 165 B.R. 92, 93 (Bkrtcy. D. R.I. 1994) ("The rule of caveat emptor applies to foreclosure sales, *see* 55 Am. Jur. 2d Mortgages § 780 (1971), as does the duty of secured creditors to exercise reasonable care and business judgment as part of the bidding process."); *Hill v. Thompson*, 564 So.2d 1, 11 (Miss. 1989) ("Caveat Emptor still reigns at foreclosure sales."); *Feldman v. Rucker*, 109 S.E.2d 379, 385 (Va. 1959) ("The trustees were under no obligation to disclose to prospective bidders facts about the property which were obvious from inspection, nor were they guilty of any fraud or misrepresentation. In foreclosure sales the rule of *caveat emptor* applies and the trustees are under no duty to make representations or answer questions."); *see also Citibank, N.A. v. Lindland*, 27 A.3d 423, 432-33 (Conn. App. 2011) ("The rule of caveat emptor is generally

applicable to judicial sales, and it is incumbent on the purchaser to conduct an independent investigation concerning the title to the property that he acquires at the sale before he consummates the closing." (citation and quotation signals omitted)).

But the doctrine of caveat emptor is not limitless -- the Hawaii Supreme Court has specifically recognized that the doctrine of caveat emptor does not apply where there is "fraud and misrepresentation practiced by the vendor." *Yoshida v. Nobrega*, 39 Haw. 235, 1952 WL 7339, at *5 (Haw. Terr. 1952). In other words, although an auctioner may not have a general duty to disclose encumbrances on a property, he may not make misrepresentations upon which bidders may rely.

Viewing the facts in a light most favorable to Plaintiff, a genuine issue of material facts exists regarding whether Defendants made any misrepresentations that Defendants had a duty to correct. Specifically, Beh stated prior to the auction that "there was a mortgage on the property and that the bank [in singular] was owed $53,000 or $54,000."[5] Doc. No. 57-1, Pl.'s Decl. ¶ 14 (alterations in original); *see also* Doc. No. 43, JPM CSF ¶ 10. This statement implies that there

---

[5] Plaintiff also asserts that after the auction, Womack made misrepresentations that "there were no other liens and that the title would be clear." Doc. No. 57-1, Pl.'s Decl. ¶ 21. Such discussion took place *after* Plaintiff had already won the auction (and was obligated to pay the full purchase amount) such that these statements could not have induced Plaintiff into bidding on the subject property.

16

was a single mortgage on the subject property. In other words, Beh's statement falsely suggested that there were no mortgages on the subject property other than the one held by JPM for approximately $53,000. Indeed, Plaintiff interpreted Beh's statement as asserting that "the subject property was being sold free and clear of any senior liens on the subject property . . . ." Doc. No. 57-1, Pl.'s Decl. ¶ 19. Given that the subject property was in fact encumbered by the First Mortgage, Beh's statement can serve as the basis for a misrepresentation claim. *See Cvitanovich-Dubie v. Dubie*, 125 Haw. 128, 160, 254 P.3d 439, 471 (2011) (defining "misrepresentation" as "[a]ny manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. . . ." (quotations omitted)). Accordingly, it is a question of fact whether Defendants[6] did in fact misrepresent that there were no senior liens on the subject property.

The court further finds that a genuine issue of material facts exists

---

[6] At the November 7, 2011 hearing, JPM argued that Beh's statements do not implicate JPM. In a supplement to the court, JPM argued that it "is not liable for the acts of its independent contractor where the principal does not direct or otherwise exercise control over a contractor with expertise and in whom full discretion and control for conducting the contracted work is vested." Doc. No. 64. The court rejects this argument for two reasons. First, this position runs counter to JPM's express assertion that "for the purposes of summary judgment, JPM will not contest that the statements of Walter Beh may be attributed to JPM." Doc. No. 42-3, JPM Mot. at 10 n.4. Second, JPM has presented no evidence explaining its relationship to Cal-Western and Beh that would allow the court to conclude that JPM is not liable for statements made by Beh.

regarding whether Plaintiff reasonably relied on Beh's statement at the auction.

"As a general principle . . . the question of whether one has acted reasonably under the circumstances is for the trier of fact to determine." *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 163, 73 P.3d 687, 701 (2003) (quoting *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Haw. 494, 503, 880 P.2d 169, 178 (1994)). Reliance may nonetheless be determined as a matter of law where reasonable minds would not differ as to the reasonableness of a plaintiff's conduct. *See id.* (citing *Young v. Price*, 47 Haw. 309, 317 n.10, 388 P.2d 203, 208 n.10 (1963)); *see also Honolulu Disposal Serv., Inc. v. Am. Ben. Plan Adm's, Inc*., 433 F. Supp. 2d 1181, 1190 (D. Haw. 2006) ("The question of whether a plaintiff's reliance was justifiable is ordinarily a question for the jury, but may be decided at the summary judgment stage where the facts support only one conclusion.").

Viewed in a light most favorable to Plaintiff, he relied on Beh's statement to mean that the subject property was not subject to any other liens and therefore bid on the subject property. Although Plaintiff could have conducted research on the subject property prior to the auction and learned of the First Mortgage on his own,[7] it is a question of fact whether Beh's statement would

---

[7] Although not entirely clear, Cal-Western appears to argue that Plaintiff did not reasonably rely on any statements by Defendants because Plaintiff had constructive knowledge of the First Mortgage through its recording, and Plaintiff was given actual notice of the First

(continued...)

assuage the concerns of a reasonable bidder.  Indeed, seven other individuals bid

on the subject property, suggesting that others were not aware of the First

Mortgage either.

The court therefore DENIES Defendants' Motions for Summary

Judgment on Plaintiff's negligent/reckless misrepresentation claim.[8]

### 2.  *Negligent/Reckless Nondisclosure*

Similar to a claim for negligent/reckless misrepresentation, a claim for

negligent/reckless non-disclosure requires that the defendant have a duty to

disclose the information at issue and that the plaintiff reasonably relied on such

silence.  Specifically, the Restatement (Second) of Torts § 551 (1977), titled

"Liability for Nondisclosure," provides:

> (1) One who fails to disclose to another a fact that he
> knows may justifiably induce the other to act or refrain
> from acting in a business transaction is subject to the
> same liability to the other as though he had represented

---

[7](...continued)

Mortgage shortly after the auction.  *See* Doc. No. 50, Cal-Western Mot. at 21.  The court rejects these arguments.  To accept Cal-Western's constructive notice argument would not only endorse a hard and fast rule that prior to an auction any reasonable bidder must perform a title search, but also ignore that the Hawaii Supreme Court has expressly acknowledged that caveat emptor does not apply where there was fraud or misrepresentation.  *See Yoshida v. Nobrega*, 39 Haw. 235, 1952 WL 7339, at *5 (Haw. Terr. 1952).  Further, whether Plaintiff was given actual notice *after* the auction does not affect the analysis -- a contract had been formed at the auction.

[8]  Neither Defendant has attempted to draw any distinction between a negligent or reckless misrepresentation claim.  The court's ruling on negligent misrepresentation thus applies with equal force to reckless misrepresentation.

the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

*See also Exotics Hawaii-Kona, Inc. E.I. du Point de Nemours & Co.*, 16 Haw. 277, 284 n.3, 172 P.3d 1021, 1028 n.3 (2007).

Unlike the misrepresentation claim, however, Hawaii courts have not found any exception to the doctrine of caveat emptor as applied to nondisclosure claims. And under the doctrine of caveat emptor, Defendants did not have general affirmative duty to disclose the First Mortgage. *See Cadet*, 2007 WL 2893418, at *11 ("[B]ecause the doctrine of *caveat emptor* applies in the foreclosure sale context, defendants and plaintiffs stood in no 'relation of trust' that would impose upon defendants a duty to disclose."); *see also Jacobs v. Bank of Am., N.A.*, 2011 WL 250423, at *3 (N.D. Cal. Jan. 25, 2011) (stating that the trustee in a nonjudicial foreclosure is simply "a common agent for the trustor and beneficiary" such that "[t]he scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist" (quotations omitted)). This lack of duty was made explicit by the terms of the auction disclaiming that the subject property was being sold "as is," and any bidder could have readily discovered the First Mortgage through a title search. Thus, although Defendants may have a duty to correct inaccurate statements upon which

reasonable bidders may rely (*i.e.*, the negligent/reckless misrepresentation claim),

Defendants had no duty on their own to disclose the First Mortgage in the first

instance.

The court therefore GRANTS Defendants' Motions for Summary

Judgment on Plaintiff's negligent/reckless nondisclosure claim.

## C.    Fraud and Deceit (Count III)

Count III of the Complaint asserts that Defendants knowingly made

misrepresentations and/or failed to disclose the First Mortgage to Plaintiff, causing

him damages.  Doc. No. 1-2, Compl. ¶ 30.  The elements for this claim are similar

to those of Count II's negligent/reckless misrepresentation claim -- a claim for

fraud requires a plaintiff to establish that "(1) false representations were made by

defendants, (2) with knowledge of their falsity (or without knowledge of their truth

or falsity), (3) in contemplation of plaintiff's reliance upon these false

representations, and (4) plaintiff did rely upon them." *Shoppe v. Gucci Am., Inc.*,

94 Haw. 368, 386, 14 P.3d 1049, 1067 (2000) (internal quotation marks and

citations omitted).  As a result, Defendants make the same arguments on this claim

as they did on the negligent/reckless misrepresentation claim -- that they had no

duty to disclose the First Mortgage to Plaintiff, they made no misrepresentations,

and Plaintiff's reliance on any statements was unreasonable.  The court rejects

these arguments for the same reasons described above -- caveat emptor does not apply where fraud has occurred and it is a question of fact whether Defendants made any misrepresentations upon which Plaintiff reasonably relied.[9]  The court therefore DENIES Defendants' Motion for Summary Judgment on Plaintiff's fraud claim.

**D.      Unfair and Deceptive Acts and Practices (Count IV)**

Count IV asserts that Defendants' misrepresentations and nondisclosures regarding the existence of the First Mortgage constituted unfair and deceptive acts and practices in violation of HRS Ch. 480.  Doc. No. 1-2, Compl. ¶ 34.  To establish a claim for violation of HRS Ch. 480, Plaintiff must establish that (1) he is a consumer; (2) Defendants engaged in an act or practice that was unfair or deceptive; (3) the unfair or deceptive act or practice occurred in the conduct of trade or commerce; and (4) the unfair or deceptive act or practice caused Plaintiff damages.  *See* HRS § 480-13; *Davis v. Wholesale Motors, Inc.*, 86 Haw. 405, 417, 949 P.2d 1026, 1038 (Haw. App. 1997).  A deceptive act or practice is: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting

---

[9]  In addition to the arguments addressed above, Cal-Western argues that Plaintiff failed to plead this claim with the requisite particularity required by Federal Rule of Civil Procedure 9(b).  Such argument is inappropriate on a Motion for Summary Judgment, as opposed to a Motion to Dismiss, and in any event Plaintiff has particularly identified the alleged misrepresentations.

reasonably under the circumstances where (3) the representation, omission, or practice is material. *Courbat v. Dahana Ranch, Inc*., 111 Haw. 254, 262, 141 P.3d 427, 435 (2006) (internal citation omitted).

Defendants argue that summary judgment should be granted on this claim because they followed the statutory provisions of HRS Ch. 667 in conducting the auction, JPM conveyed to Plaintiff its entire interest in the subject property, and no misrepresentations were made.[10] Doc. No. 42-3, JPM Mot. at 16-18. But as explained above, it is a question of fact whether Defendants made misrepresentations upon which Plaintiff reasonably relied. The misrepresentations arguably qualify as deceptive acts or practices -- misleading Plaintiff about the existence of the First Mortgage (or rather, lack thereof) was material and it is a question of fact whether consumers acting reasonably under the circumstances would have been misled. The court therefore DENIES Defendants' Motion for Summary Judgment on Count IV.

---

[10] For the first time in its Reply, Cal-Western also argues that Plaintiff has not provided any support for his claim of damages. *See* Doc. No. 60 at 11-12. The court does not address arguments made for the first time on Reply. *See, e.g.*, *Hi-Tech Rockfall Constr., Inc. v. Cnty. of Maui*, 2009 WL 529096, at *18 n.9 (D. Haw. Feb. 26, 2009) ("Local Rule 7.4 provides that '[a]ny arguments raised for the first time in the reply shall be disregarded.'"); *Coos Cnty. v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).

### E. Cal-Western's Laches Argument

Finally, Cal-Western argues that Plaintiff's claims are barred by the doctrine of laches. To establish that laches applies, Cal-Western must establish two elements: "First, there must have been a delay by the plaintiff in bringing his claim[ ] and that delay must have been unreasonable under the circumstances. . . . Second, that delay must have resulted in prejudice to defendant." *Adair v. Hustace*, 64 Haw. 314, 321, 640 P.2d 294, 300 (1982). Although Cal-Western argues that Plaintiff unreasonably delayed in bringing this action, Cal-Western failed to even address how, if at all, it has been prejudiced by this delay. Cal-Western has not carried its burden on summary judgment. *See Venture 15, Inc*., 115 Haw. at 277, 167 P.3d at 284 (affirming denial of summary judgment where the defendant "failed to present to this court any evidence of prejudice caused by the claimed unreasonable delay," and instead "merely asserts in conclusory fashion that it has been 'severely prejudiced'").

## V. <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES in part JPM's and Cal-Western's Motions for Summary Judgment. Plaintiff's claims remaining in this action include: (1) Count II for negligent/reckless

///

misrepresentation; (2) Count III for fraud; and (3) Count IV for unfair and

deceptive acts and practices.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 22, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Kalama v. JP Morgan Chase Bank et al.*, Civ. No. 10-00278 JMS/KSC; Order (1) Granting in
Part and Denying in Part Defendant JP Morgan Chase Bank, Individually and as Trustee fka the
Chase Manhattan Bank as Trustee's Motion for Summary Judgment; and (2) Granting in Part
and Denying in Part Cal-Western Reconveyance Corporation's Motion for Summary Judgment

25